| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only)<br>18-90063 |
|---|---|
| **PLAINTIFFS**<br>Warda Yonan | **DEFENDANTS**<br>Randy Michael Carman, Atared Kamel Naamo and Tower Bakery |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>CRAIG J. LEFF<br>California Bar Number 202144<br>2207 Catalina Boulevard<br>San Diego, California 92107 | **ATTORNEYS** (If Known)<br>Law Office of Richard Komisars<br>2840 Adams Avenue, Suite 309<br>San Diego, California 92116 |
| **PARTY** (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor  ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☑ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Creditor, Warda Yonan gave Debtor $43,000, to become a partner in Tower Baker. Debtor took this money with intent to defraud Plaintiff, and in fact did defraud Plaintiff, in violation of 11 U.S. Code § 727 , in that Debtor intended to defraud Plaintiff per § 727(a)(2) & (B)(3) & (B)(4) and Debtor seeks to use the Bankruptcy Court to facilitate their fraud.

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☑ 11 - Recovery of money/property - § 542 turnover of property
☐ 12 - Recovery of money/property - § 547 preference
☑ 13 - Recovery of money/property - § 548 fraudulent transfer
☐ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☑ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
☑ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 - Dischargeability - § 523(a)(5), domestic support
☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 - Dischargeability - § 523(a)(8), student loan
☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 - Injunctive relief - reinstatement of stay
☐ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01 - Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa et.seq.
☐ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

☐ Check if this case involves a substantive issue of state law     ☐ Check if this is asserted to be a class action under FRCP 23
☑ Check if a jury trial is demanded in complaint     Demand $ $60,000

**Other Relief Sought**
Turnover of Tower Bakery assets, interest on money, punitive damage for fraud, attorney fees.

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Randy Michael Carman, Atared Kamel Naamo, Tower Bakery | | BANKRUPTCY CASE NO.<br>18-00533-7 |
| DISTRICT IN WHICH CASE IS PENDING<br>Southern | DIVISIONAL OFFICE | NAME OF JUDGE |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF<br>Warda Yonan | DEFENDANT<br>Randy Michael Carman, Atared Kamel Naamo, Tower Bakery | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Southern | DIVISIONAL OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| DATE<br>May 7, 2018 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Craig J. Leff |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

```
1  CRAIG J. LEFF
   California Bar Number 202144
2  2207 Catalina Boulevard
   San Diego, California 92107
3  Telephone: (619) 758-1712
   Facsimile:  (619) 226-8052
4
   Attorney for Creditor
5  WARDA YONAN
```

FILED

2018 MAY -7 PM 3:54

CLERK
U.S. BANKRUPTCY CT.
SO. DIST. OF CALIF.

United States Bankruptcy Court

Southern District of California

| | |
|---|---|
| In re: Randy Michael Carman,<br>Atared Kamel Naamo and<br>Tower Bakery<br><br>               Debtor<br><br>Address:    746 Mahogany Drive<br>                     El Cajon, California 92019<br><br>Last four digits of Social Security or<br>Individual Tax-payer Identification<br>Carman: 7496; Naamo: 5435 | Case No.   18-00533-MM7<br><br>Chapter   7   18-90063 |

### NOTICE OF COMPLAINT TO CHALLENGE DISCHARGE

**PLEASE TAKE NOTICE** that on the above date, in the above-entitled Court, at the above time, or as soon thereafter as may be heard, Creditor, WARDA YONAN, by and through her attorney, Craig J. Leff, will move the Court for an Order Denying the Debtor's discharge for Creditor's debt listed in Part 4, Paragraph 9.

**This motion is made on the following grounds:**

(1)    Debtor seeks to discharge this obligation in violation of 11 U.S. Code § 727, in that Debtor intended to defraud Plaintiff per § 727(a)(2) & (B)(3) & (B)(4) and Debtor seeks to use the Bankruptcy Court to facilitate their fraud.

////

////

Complaint Challenging Discharge

I.

## STATEMENT OF FACTS

This Statement of Facts is drawn from the Statement of Facts contained in Creditors Complaint for Money filed against Debtors, in Case #: 37-2017-00026581. This Complaint provided the genesis for Debtor's filing Bankruptcy.

In the second half of 2013, Creditor, WARDA YONAN, went to Debtor's store to thank them for helping a family member of Creditor's. While there, one owner, Debtor, ATARED NAMOU asked Creditor what she was ding with her life. Ms. YONAN told Ms. NAMOU, she was looking to buy a business.

Ms. NAMOU told Ms. YOUNAN, that Ms. YONAN could buy Ms. NAMOU's business, Tower Bakery. Ms. YONAN told Ms. NAMOU she did not know anything about running a bakery. Ms. NAMOU told her not to worry, she would teach and train Creditor everything Creditor needed to know and Debtors would not leave until Creditor was fully trained.

Debtor's provided Creditor a financial statement purporting to show that Tower Bakery was worth $120,000. Debtor RANDY CARMAN, the husband of Debtor, ATARED NAMOU, also an owner of Tower Bakery, offered to sell Tower Bakery to Creditor for $80,000. Debtors agreed that Creditor could make payments of $20,000, until Creditor could fully purchase Tower Bakery.

All parties agreed that Creditor, could leave with her deposit, if Creditor decided the Bakery was not for her. On this date, August 24, 2013, Creditor paid Debtors $20,000, as a deposit for the purchase of Tower Bakery, per the oral contract between Plaintiff and Defendants.

From the day of Creditor's deposit, till the day Debtor's agreed to be a partners with Creditor, Creditor worked for free, to learn the business, in lieu of Debtor's charging Creditor $10,000 to train Creditor. This was a period of approximately two months.

On October 19, 2013, Creditor paid Debtor's a second payment of $20,000, per the oral contract between Creditor and Debtors, as a second deposit for the purchase of Tower Bakery. In November, 2013, Creditor gave Debtors an additional $3,000 for the purchase of inventory for Tower Bakery.

At this time (November, 2013), Creditor, Ms. YONAN, and Debtor, Mr. CARMAN, agreed

that Creditor and Debtors, and each of them, were partners in the Bakery, as Creditor, Ms. YONAN, could not make the next payment. Debtor, Mr. CARMAN, offered to stay for a year, then it would be Creditor, Ms. YONAN's decision whether she wanted Debtors to stay as partners, or whether she would stay on as full owner.

Sometime later, the lease for Tower Bakery was due to be renewed. Debtor, Mr. CARMAN, did not discuss the new lease with Creditor, nor did he put Creditor's name on the new lease. Creditor was not allowed to make any business decisions, nor was she allowed to make any business suggestions. She was not given any information regarding business accounts, tax liabilities or any other business related information, despite having invested $43,000 in Tower Bakery.

After being trained and learning the business, Creditor worked full time at Tower Bakery in 2014 and 2015. She worked with the expectation of sharing in the profits as an owner. Ultimately, she was not paid one penny in income for those two years, nor was she allowed to share in any business profits.

In the beginning of 2016, Creditor was told by Debtors that the bakery was making less money than the year before. Creditor asked Debtor, Mr. CARMAN, for an accounting. Debtor, Mr. CARMAN, told Creditor there was not enough money to give her an accounting, they were short, so there would be not accounting. Creditor asked for account numbers and tax returns and Debtors, and both of them, refused to provide this information to Creditor.

After this, Creditor, decided not to complete the purchase of Tower Bakery, because it was not making enough money. Creditor and Debtors agreed to sell the bakery. Creditor asked Debtor, Mr. CARMAN, to post the business for sale online, so she could get her money back. Debtor, Mr. CARMAN, refused to do so.

During this time, Debtor, Ms. NAMOU, began criticizing and berating Creditor, telling Creditor, she was not doing things correctly, she was too slow, customers were complaining about her.

In May, June and July, problems continued to develop between Creditor and Debtors. On July 31, 2016, Debtor, Ms. NAMOU, then told Creditor: "I don't need a partner, it was a mistake to have you as a partner. Take you money and go". Creditor asked for her money. Debtors, and

1  each of them, told Creditor they did not have it, she would get it later.

2  As of the date of this filing, despite repeated requests for the return of her money, Creditor
3  has not received any of her: (1) deposit from Debtors, (2) inventory payment and (3) any payment for
4  her full time work for Debtors in 2014 and 2015.

5  In an effort to get Creditor to invest in Tower Bakery, Debtors, and each of them, made the
6  following representations to Creditor: (1) that Tower Bakery, as a business, was worth $120,000; (2)
7  Creditor could buy Tower Bakery for $80,000; (3) that the two payments of $20,000 that Creditor
8  gave to Debtors, and each of them, would be part of the purchase price of the business, (4) that
9  Creditor could be a partner in the business; (5) the separate $3,000, that Creditor gave to Debtors,
10 and each of them, was to purchase inventory for Tower Bakery and (6) if the partnership did not
11 work out, Creditor could have her money back.

12 The representations made by Debtors, and each of them, to Creditor were false and were
13 made with the intention of inducting Creditor to rely upon them and Creditor, in fact did rely on
14 them, to her detriment.

15 Creditor hired to prior attorneys in an effort to get Debtor's to return her money. Those
16 attorneys sent two letters to Debtors that Debtors ignored. Creditor then hired the undersigned, who
17 sent a third letter to Debtors, who ignored this letter.

18 The undersigned then filed suit in Superior Court. Debtors answered and counter sued. The
19 undersigned then commenced discovery and Debtors refused to provide any response, requesting
20 more time to do so. In an effort to accommodate Debtors, the undersigned granted their request for
21 an extension to reply to discovery. On the date their reply was due, debtors filed bankruptcy.

22                                    **II.**

23          **THE COURT MAY DENY BANKRUPTCY ON THE BASIS OF FRAUD**

24 The Court shall grant a debtor a discharge, unless the debtor has concealed, destroyed,
25 mutilated, falsified, or failed to keep or preserve any recorded information, including books,
26 documents, records, and papers, from which the debtor's financial condition or business transactions
27 might be ascertained, unless such act or failure to act was justified under all of the circumstances of
28 the case or the debtor knowingly and

Complaint Challenging Discharge                                                    Page 4 of 6

1  fraudulently, in or in connection with the case— (A) made a false oath or account; (B) presented
2  or used a false claim. **11 U.S. Code § 727 (a)(2), (a) (3)(4)(A)(B)**

3        Debtor's discharge also falls within the exceptions to discharge. ...A discharge under section
4  727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any
5  debt and for money, property, services, or an extension, renewal, or refinancing of credit, to the
6  extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a
7  statement respecting the debtor's or an insider's financial condition. **11 U.S. Code § 523**
8  **(a)(C)(2)(A)** Also, § (a)(6) excepts from discharge a debt "for willful and malicious injury by the
9  debtor to another entity. **11 U.S. Code § (a)(6)**

10        Debtors conduct demonstrated Debtors intended to defraud Creditor and commenced a course
11  of conduct intended to defraud Creditor.  First, Debtors took Creditors money.  Then Debtors
12  induced Creditor to work for them for free, telling Creditor this was in lieu of $10,000 of training
13  for two months.  Debtors intended to defraud Creditor and made this $10,000 figure up out of thin
14  air.

15        Debtors continued this course of fraudulent conduct.  After telling Creditor she would be a
16  "partner" in the business, Creditor could not make the next payment.  So, when the time came for
17  Creditor to be made a "partner", debtors refused to make her a "partner", refused to put her name
18  on the lease, refused to allow her to participate in business decisions and then refused to give
19  Creditor any portion of her money back.

20        This fraudulent conduct continued.  Debtors ignored Creditors attempts to get Debtors to
21  return her money.  Debtors then forced Creditor to spend money, forcing Creditor to either write off
22  her money or sue Debtors. Debtors then counter sued, alleging Creditor breached, by not completing
23  the purchase.  Debtors then sought extensions for their discovery responses.  First, was for
24  interrogatories. More importantly, the second was for Creditor's Special Interrogatories (Included),
25  which sought Debtor's financial information, in an attempt to trace where Creditors money went.

26        Rather than provide this information, Debtors sought bankruptcy, knowing the Court would
27  not require them to produce such information.

28

Complaint Challenging Discharge                                                                    Page 5 of 6

## III.
## CONCLUSION

For the foregoing reasons, Creditor respectfully requests the Court deny Debtors discharge on Creditors claim. In the alternative, Creditor respectfully requests the Court order Debtors to provide all documentary information Creditor requested in her Special Interrogatories, before granting any discharge on Creditor's claims.

Dated: May 7, 2018

Respectfully Submitted,

Craig J. Leff
Attorney For Creditor
Warda Yonn

CRAIG J. LEFF
California Bar Number 202144
2207 Catalina Boulevard
San Diego, California 92107
Telephone: (619) 758-1712
Facsimile: (619) 226-8052

Attorney for Plaintiff
WARDA YONAN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| WARDA YONAN,<br><br>    Plaintiff,<br><br>v.<br><br>RANDY CARMAN, ATARED NAMOU, and Does 1-10, inclusive,<br><br>    Defendants. | Case No.   37-2017-00026581<br><br><br><br>**CROSS-DEFENDANTS DEMAND FOR PRODUCTION OF DOCUMENTS AND/OR THINGS**<br>**Set One** |
| TOWER BAKERY, a partnership,<br><br>    Cross-Complainant,<br><br>v.<br>WARDA YONAN and DOES 1-10<br><br>    Cross-Defendants. | |

PROPOUNDING PARTY:   PLAINTIFF AND CROSS-DEFENDANT WARDA YONAN

RESPONDING PARTY:   DEFENDANTS AND CROSS-COMPLAINANTS RANDY CARMAN AND ATARED NAMOU

SET NUMBER:   ONE

    Pursuant to California Code of Civil Procedure § 2031 the propounding party requests that the responding party serve within 30 days from the date of service of this request the written responses under oath required by California Code of Civil Procedure § 2031. The place for serving of the responses shall be the Law Offices of Craig J. Leff, 2207 Catalina Boulevard, San Diego,

Plaintiff's and Cross-Defendant's Demand For Production

EXHIBIT "1"

California 92107. The propounding party further requests that you produce the following for inspection and copying thirty days from the date of service of this request, at the address set forth above. You are requested to produce any and all things specified below which are in your possession, custody or control, or in the possession, custody or control of your attorneys, agents, employees or other representatives.

The materials to be produced are as follows:

**DEFINITIONS**

1. DOCUMENT: means without limitation, any kind of written, type-written, computerized, graphic, photographic, printed, taped or recorded material whatsoever, regardless of whether the same is an original, a copy, a reproduction, a facsimile or draft, and regardless of the source or author thereof, including, without limitation, bank statements, brokerage account statements, canceled checks, receipts, photographs, tapes, diskettes, disc packs, photographic records, laser discs, transcriptions, notes, memoranda of conversations in meetings, telephone communications or tape recordings, desk calendars, journals, diaries, time sheets or logs, computer data, computers, adding machines, calculator and other statistical or data printouts, appointment books, records, files, ledgers, extracts and summaries of other documents, computations, microfilm, microfiche, or any other electronic data storage device. The term DOCUMENTS includes original documents and copies of original documents and also includes anything defined as "writing" in § 250 of the California Evidence Code.

2. COMMUNICATION: means any transmittal and/or receipt of information, whether written or oral and whether such was by chance, prearranged, formal or informal, and specifically included, without limitation, conversations in person, telephone conversations, telegrams, letters, memoranda, formal statements, faxes, e-mails, telexes, press memoranda, newspaper stories, television stories, radio stories, or any other occurrence where thoughts, opinions or data are transmitted between two or more persons.

3. YOU and YOUR: means RANDY CARMAN, and ATARED NAMOU their employees, their agents, their insurance companies, their attorneys, their account managers, their investment advisors and anyone else acting on their behalf.

4. ANY AND ALL: means "any," "all," and "each and every."

5. REFLECTING OR RELATING TO: means mentioning, discussing, evidencing, summarizing, describing, referring to, relevant to, depicting, embodying, constituting, reporting or in any way involving.

6. EACH AND EVERY: means "any, "all," and "any and all."

7. ACCOUNT or ACCOUNTS: means a sum of money placed on deposit with a BANK OR INSTITUTION and subject to be drawn out including, but not limited to a checking, time, interest or savings account, an investment account, stock, mutual fund, retirement account, insurance policy or any other investment or deposit of money.

## CATEGORIES OF ITEMS DEMANDED

1. ANY AND ALL DOCUMENTS REFLECTING OR RELATING TO COMMUNICATIONS between YOU and anyone acting on YOUR behalf REFLECTING OR RELATING TO the events alleged in YOUR complaint.

2. ANY AND ALL DOCUMENTS REFLECTING OR RELATING TO COMMUNICATIONS between YOU and anyone acting on YOUR behalf REFLECTING OR RELATING TO Plaintiff's first payment to YOU of $20,000 on August 24, 2013.

3. ANY AND ALL DOCUMENTS REFLECTING OR RELATING TO COMMUNICATIONS between YOU and anyone acting on YOUR behalf REFLECTING OR RELATING TO Plaintiff's second payment to YOU of $20,000 on October 19, 2013.

4. ANY AND ALL DOCUMENTS, including but not limited to bank statements and brokerage account statements, REFLECTING OR RELATING TO EACH AND EVERY ACCOUNT YOU had open from August, 2013 until today.

5. ANY AND ALL DOCUMENTS, including but not limited to bank statements and brokerage account statements, REFLECTING OR RELATING TO EACH AND EVERY ACCOUNT at financial institutions that YOU ever had control over or an interest in between August, 2013, through the present date

6. ANY AND ALL DOCUMENTS REFLECTING OR RELATING TO COMMUNICATIONS between YOU and any third party REFLECTING OR RELATING TO the allegations stated

1     in YOUR cross-complaint.

2  7.   ANY AND ALL DOCUMENTS REFLECTING OR RELATING TO YOUR fee agreement
3     with Richard Kormisars, III, Esq.

4  8.   ANY AND ALL DOCUMENTS which support YOUR denial of the allegations contained
5     in the Complaint of Warda Yonan.

6  9.   EACH AND EVERY TAX RETURNS filed by YOU or YOUR agents for the years of:
7     2013, 2014, 2015, 2016 and 2017.

8  10.  ANY AND ALL DOCUMENTS upon which YOU based YOUR tax returns on, for the years
9     of: 2013, 2014, 2015, 2016 and 2017.

10  11.  ANY AND ALL DOCUMENTS which support EACH AND EVERY denial contained in
11     YOUR Answer to Plaintiff's Complaint;

12  12.  ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR First
13     Affirmative Defense.

14  13.  ANY AND ALL DOCUMENTS which support YOUR assertions constrained in YOUR
15     Second Affirmative Defense.

16  14.  ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR
17     Third Affirmative Defense.

18  15.  ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR
19     Fourth Affirmative Defense.

20  16.  ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR
21     Fifth Affirmative Defense.

22  17.  ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR
23     Sixth Affirmative Defense.

24  18.  ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR
25     Seventh Affirmative Defense.

26  19.  ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR
27     Eighth Affirmative Defense.

28  20.  ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR

1 | Ninth Affirmative Defense.

2 | 21. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Tenth Affirmative Defense.

3 | 22. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Eleventh Affirmative Defense.

4 | 23. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Twelfth Affirmative Defense.

5 | 24. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Thirteenth Affirmative Defense.

6 | 25. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Fourteenth Affirmative Defense.

7 | 26. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR FIFTEENTH Affirmative Defense.

8 | 27. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Sixteenth Affirmative Defense.

9 | 28. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Seventeenth Affirmative Defense.

10 | 29. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Eighteenth Affirmative Defense.

11 | 30. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Nineteenth Affirmative Defense.

12 | 31. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Twentieth Affirmative Defense.

13 | 32. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Twenty-First Affirmative Defense.

14 | 33. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Twenty-Second Affirmative Defense.

15 | 34. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR

Twenty-Third Affirmative Defense.

35. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Twenty-Fourth Affirmative Defense.

36. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Twenty-Fifth Affirmative Defense.

37. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Twenty-Sixth Affirmative Defense.

38. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Twenty-Seventh Affirmative Defense.

39. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Twenty-Eighth Affirmative Defense.

40. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Twenty-Ninth Affirmative Defense.

41. ANY AND ALL DOCUMENTS which support YOUR assertion, constrained in YOUR Thirtieth Affirmative Defense.

Dated: December 13, 2017

_____
Craig J. Leff
Attorney for
Warda Yonan